UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT E. PERDUE,
    Plaintiff,

v.

DONALD MORGAN, et al.,
    Defendants.

Case No. 1:13-cv-878

Barrett, J.
Litkovitz, M.J.

**REPORT AND RECOMMENDATION**

    Plaintiff, an inmate at the Southern Ohio Correctional Facility (SOCF), brings this pro se civil rights action pursuant to 42 U.S.C. § 1983. Following judicial screening of plaintiff's original and amended complaints, plaintiff's claims against the Ohio Department of Rehabilitation and Correction (ODRC), ODRC Director Gary Mohr, and the Southern Ohio Correctional Facility were dismissed. (Docs. 12, 34). In addition, plaintiff's claims pertaining to certain Rules Infraction Board proceedings, the theft and destruction of his personal property, and the adequacy of the food at SOCF were also dismissed. *Id.* Plaintiff was permitted to proceed with his Eighth Amendment failure to protect and deliberate indifference to safety claims against SOCF Warden Donald Morgan and Correctional Officer Keith Parker and on his Eighth Amendment excessive use of force claim against SOCF Sgt. Mike Dillow. *Id.*

    This matter is before the Court on defendants Morgan and Dillow's and plaintiff's cross-motions for summary judgment (Docs. 111, 115), their responses in opposition (Docs. 114, 117), and their reply memoranda (Docs. 116, 118, 120).

**I. Background**

    Plaintiff alleges he was attacked by fellow inmates on several occasions while incarcerated at SOCF. Plaintiff claims that he was the victim of gang attacks on June 2, 2012,

April 28, 2013, and July 16, 2013, and that Warden Morgan failed to provide safe housing or control SOCF's gang population. Plaintiff further alleges that on August 21, 2013, defendant Kevin Parker[1] intimidated, threatened and directed racial slurs at him and failed to protect plaintiff during the course of a protective custody interview. Plaintiff claims that defendant Dillow attacked him during the interview and that defendant Parker witnessed the attack but failed to intervene. Plaintiff alleges that he sustained injuries to his shoulder, knee and hip during the incident. Plaintiff seeks summary judgment on the basis of these claims. (Doc. 115).

Defendants Morgan and Dillow move for summary judgment on the basis that plaintiff failed to exhaust the prison grievance procedure on his Eighth Amendment claims in accordance with the Prison Litigation Reform Act (PLRA), 42 U.SC. § 1997e(a), prior to filing this lawsuit. (Doc. 111). Defendants submit the affidavit of Antonio Lee, the Assistant Chief Inspector for the Ohio Department of Rehabilitation and Correction and custodian of records of prisoner grievances and appeals. (Doc. 111, Ex. 1, ¶ 2, Lee Declaration). Mr. Lee states that every inmate in the custody of ODRC is given both written and oral instructions on the inmate grievance procedure, including instructions on direct grievances and appeals to the Office of the Chief Inspector. (*Id.*, ¶ 7). Mr. Lee attests that he reviewed plaintiff's pertinent grievance records as well as the complaint in this matter. (*Id.*, ¶ 8). Mr. Lee attests that these records show the following:

> 11. Inmate Perdue filed his Notification of Grievance CI-11-13-000044 grieving misconduct by the Warden of SOCF regarding the above-mentioned claims on November 26, 2013. (Exhibits A, H-pg. 2 of 19).[2]

---

[1] Defendant Kevin Parker has not yet been served with the complaint and amended complaints in this case. (Doc. 122).

[2] Although Mr. Lee attests that this Notification of Grievance was filed on November 26, 2013, it appears this form may have been filed as early as October 22, 2013, as indicated by the date and the initials "LM" which appear on the first page of the form and the stamp on the fourth page of the form providing: "Received OCT 22 2013 Major Chief of Security." *See* Doc. 111, Ex. A at 1, 4. In any event, as explained *infra*, this alleged discrepancy is not material because it is undisputed that the ODRC Chief Inspector's appeal decision was not issued until December 11, 2013, after plaintiff had already filed his original complaint. *See id.*, Ex. B.

> 12. Inmate Perdue did not complete the grievance process until December 11, 2013 when the Chief Inspector issued his decision, finding that Inmate Perdue failed to substantiate his allegations of threats by gang members and failed to demonstrate that Warden Morgan was personally and knowingly involved in a violation of law, rule, or policy and approved it or did nothing to prevent it. Accordingly, Grievance No. CI-11-13-000044 was denied. (Exhibit B).
>
> 13. The grievance records also indicate that Inmate Perdue failed to exhaust his administrative remedies regarding an incident on August 23, 2013 from which he claimed excessive use of force against Defendant Sgt. Mike Dillow.
>
> 14. Inmate Perdue first addressed this claim in a Notification of Grievance dated August 29, 2013 in Grievance No. 9-13-133 (Exhibit C). The ICR for Grievance No. 9-13-133 is dated August 21, 2013, prior to the alleged incident of August 23, 2013, and does not contain any allegations of excessive force by Sgt. Dillow. (Exhibit D). Perdue's Notification of Grievance was denied on September 17, 2013 by the SOCF institutional inspector. (Exhibit E). Perdue failed to file an appeal of this disposition to the Chief Inspector's Office.
>
> 15. Inmate Perdue also raised claims of excessive use of force against Sgt. Dillow in an ICR dated September 2, 2013 to Major Warren. (Exhibit F, ICR No. 9-13-48). Perdue filed a second ICR on September 2, 2013, in which he alleged excessive use of force against Sgt. Dillow, to UMA Mrs. Davis. (Exhibit G, ICR No. 9-13-61). After receiving a response to his ICRs, Perdue failed to complete the grievance process by filing a Notification of Grievance or appeal to the Chief Inspector.[3]

(Doc. 111, Ex. 1, ¶¶ 11-15, Lee Declaration).

In opposition to defendants' motion for summary judgment, plaintiff states that even if his grievances were not properly filed, this would be an insufficient basis upon which to grant summary judgment for defendants given the "cover-[up] crimes and safety issue[s]" he has raised. (Doc. 114 at 2). Plaintiff states he has been subjected to a campaign of retaliation, including having his mail and legal work tampered with and destroyed. (*Id.*). Plaintiff attaches a copy of his grievance history as "proof" that he has knowledge of his administrative remedies

---

[3] Although there are other "received" stamps with different dates appearing on this document, whether or not plaintiff submitted his ICR on September 2, 2013 or some other date is not material for purposes of defendants' motion for summary judgment because it is undisputed that plaintiff did not complete the third step of the prison grievance procedure as explained *infra*.

and that there is "no reason for him not to file [a] proper grievance against" defendants. (Doc. 114 at 3).

In his motion for summary judgment, as best the Court can discern, plaintiff alleges he exhausted his administrative remedies against defendants Morgan and Dillow and that to the extent he did not, this was because SOCF staff destroyed his documents or otherwise hindered his efforts. (Doc. 115 at 3). Plaintiff supports his motion with his own affidavit. *See* Doc. 115 at 15. Plaintiff declares that he completed all administrative grievance procedures regarding defendant Dillow. (*Id.*, ¶ 1). Plaintiff further declares that SOCF staff destroyed his legal documents and grievances or otherwise prevented him from completing them. (*Id.*, ¶ 3). Plaintiff's affidavit also includes his representations that defendant Morgan failed to provide him safe housing and that defendant Dillow used excessive force against him. (*Id.*, ¶¶ 2, 5). Plaintiff has also submitted copies of the ICRs and Notification of Grievance forms submitted in connection with defendants' summary judgment motion. *See* Doc. 115 at 6-14.

## II. Summary Judgment Standard

Fed. R. Civ. P. 56 allows summary judgment to secure a just and efficient determination of an action. The court may only grant summary judgment as a matter of law when the moving party has identified, as his basis for the motion, an absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). The party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue. . . ." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986) (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253 (1968)). The evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*,

398 U.S. 144, 158 (1970)). Moreover, documents filed by a pro se litigant are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**III. Resolution**

Under 42 U.S.C. § 1997e, as amended by the PLRA, a prisoner confined in any jail, prison or other correctional facility may not bring an action challenging "prison conditions" under 42 U.S.C. § 1983 or any other federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of administrative remedies "is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

The PLRA mandates "proper" exhaustion, meaning a prisoner must comply with the deadlines and other critical procedural rules that govern an internal grievance process as a precondition to bringing suit in federal court. *Woodford v. Ngo*, 548 U.S. 81, 90, 93 (2006). "An inmate exhausts a claim by taking advantage of each step the prison holds out for resolving the claim internally and by following the 'critical procedural rules' of the prison's grievance process to permit prison officials to review and, if necessary, correct the grievance 'on the merits' in the first instance." *Reed-Bey v. Pramstaller*, 603 F.3d 322, 324 (6th Cir. 2010) (quoting *Woodford*, 548 U.S. at 90). The prison grievance process must be completed before a federal complaint has been filed, and an inmate may not exhaust administrative remedies during the pendency of his

federal lawsuit. *Hopkins v. Ohio Dept. of Corrections*, 84 F. App'x 526, 527 (6th Cir. 2003) (citing *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999)).

Inmates at institutions that are maintained by the Ohio Department of Rehabilitation and Correction are bound to follow the three-step inmate grievance procedure set forth in Ohio Admin. Code § 5120-9-31(K). (Doc. 111, Lee Decl., ¶ 3). The inmate grievance procedure is available to all inmates, regardless of their disciplinary status at their institution, and an inmate may seek relief regarding any aspect of institutional life that directly and personally affects him. Ohio Admin. Code § 5120-9-31(A), (D); Lee Decl., ¶ 3. The grievance procedure consists of three consecutive steps. Ohio Admin. Code § 5120-9-31(K); Lee Decl., ¶ 4. Step one requires the inmate to file an informal complaint with the direct supervisor of the department or staff member most directly responsible for the issue that is the subject of the complaint within 14 days of the date of the event giving rise to the grievance. Ohio Admin. Code § 5120-9-31(K)(1); Lee Decl., ¶ 4. Second, if the inmate is dissatisfied with the response, or if the informal complaint process has been waived, he may proceed to step two by filing a notification of grievance with the Institutional Inspector within 14 days from the date of the informal complaint response or waiver. Ohio Admin. Code § 5120-9-31(K)(2); Lee Decl., ¶ 5. Third, if the inmate is dissatisfied with the disposition of grievance, he may proceed to step three of the grievance process by submitting an appeal to the Office of the Chief Inspector at ODRC within 14 days of the date of the disposition of grievance. Ohio Admin. Code § 5120-9-31(K)(3); Lee Decl., ¶ 6. Where the inmate alleges misconduct on the part of the warden or inspector of institutional services at the prison where the inmate is confined, the inmate may initiate a grievance directly with the Office of the Chief Inspector. Ohio Admin. Code 5120-9-31(L); Lee Decl., ¶ 6. The Chief Inspector is to provide a written response within 30 calendar days of receiving an appeal,

unless he extends the time frame for good cause and notifies the inmate. Ohio Admin. Code § 5120-9-31(K)(3). A decision of the Chief Inspector is final and concludes the grievance process. *Id.*; Lee Decl., ¶ 6.

Here, the undisputed evidence demonstrates that plaintiff failed to exhaust his available administrative remedies prior to filing his federal complaint against defendants Morgan and Dillow. Plaintiff filed this lawsuit on November 27, 2013. (Doc. 1). However, plaintiff did not exhaust the prison grievance procedure against defendant Morgan until December 11, 2013, the date the Chief Inspector issued his decision on plaintiff's grievance appeal. *See* Doc. 111, Ex. B. In his response in opposition to defendants' summary judgment motion, plaintiff does not dispute this evidence or otherwise explain his failure to exhaust his administrative remedies with respect to his claims against defendant Morgan prior to initiating this action. As it is undisputed that plaintiff did not exhaust his administrative remedies against defendant Morgan until *after* he had already filed this lawsuit, defendant Morgan is entitled to summary judgment as a matter of law. *Mack v. Dewitt*, 40 F. App'x 36, 38 (6th Cir. 2002) (citing 42 U.S.C. § 1997e(a); *White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) ("When a prisoner fails to exhaust his administrative remedies before filing a civil rights complaint in federal court, or only partially exhausts administrative remedies, dismissal of the complaint is appropriate."). *See also Napier v. Laurel Cty., Ky.*, 636 F.3d 218, 226 (6th Cir. 2011) (noting that the "PLRA's exhaustion requirement is a strict one" and upholding grant of summary judgment where undisputed evidence established that inmate did not exhaust his administrative remedies prior to filing his lawsuit and where there was no evidence showing that the administrative remedies were unavailable to him).

Likewise, defendant Dillow is entitled to summary judgment because plaintiff failed to

complete the prison grievance procedure on his excessive use of force claim against defendant Dillow. The evidence submitted by both defendants and plaintiff establishes that plaintiff completed steps one and two of Ohio's grievance process by submitting ICRs and a Notification of Grievance complaining of defendant Dillow's alleged use of excessive force. *See* Doc. 111, Exs. D-G. However, there is no evidence that plaintiff ever pursued an appeal to the Office of the Chief Inspector, i.e., step three of the ODRC grievance process. Under step three, plaintiff was required to appeal to the Office of the Chief Inspector within two weeks of receiving a response to his step two formal grievance (the Notification of Grievance). Ohio Admin. Code § 5120-9-31(K)(3). The evidence submitted by defendants shows that SOCF responded to and denied plaintiff's Notification of Grievance on September 17, 2013. *See* Doc. 111, Ex. E (the SOCF Inspector of Institutional Services denied plaintiff's Notification of Grievance against defendant Dillow and found his claims to be without merit). While plaintiff generally asserts in his affidavit that he "completed all admin[istrative] grievance procedures concerning [defendant] Dillow," he does not specifically allege that he filed an appeal to the ODRC Chief Inspector from the denial of his Notification of Grievance. (Doc. 115 at 15). Moreover, plaintiff's unsupported and conclusory assertion that SOCF staff somehow prevented him from completing the process is not only inconsistent with his assertion he in fact completed the process, but it is insufficient to raise a genuine issue of fact to defeat defendant Dillow's motion for summary judgment. *See Cullins v. Page*, No. 1:12-cv-102, 2013 WL 214848, at *4 (S.D. Ohio Jan. 18, 2013) (Report and Recommendation), *adopted*, 2013 WL 1181610 (S.D. Ohio March 21, 2013) (mere general assertion that prisoner was prevented from exhausting administrative remedies, without "specific factual allegations about the type of conduct that prevented [prisoner] from using or completing the . . . grievance procedure," is not enough). Plaintiff has provided no

specific information about who prevented him from pursuing an appeal, when this happened, or how he was prevented from pursuing the prison grievance procedure to its completion on his claims against defendant Dillow. Plaintiff's general assertion that he was prevented from exhausting his administrative remedies, without more, is insufficient to raise a genuine issue of fact to defeat defendant Dillow's motion for summary judgment. Because plaintiff did not pursue step three of Ohio's grievance process by appealing to the ODRC Chief Inspector before filing this lawsuit, he failed to exhaust his administrative remedies under the PLRA and defendant Dillow is entitled to summary judgment as a matter of law. *See Harris v. Battle*, No. 1:12-cv-940, 2013 WL 5389240, at *5 (S.D. Ohio Sept. 25, 2013) (Report and Recommendation), *adopted*, 2013 WL 5755416 (S.D. Ohio Oct. 23, 2013) (granting summary judgment in favor of defendant where undisputed facts established that plaintiff had failed to complete step three of the ODRC grievance process).

In conclusion, defendants Morgan and Dillow are entitled to summary judgment because there is no genuine dispute of material fact about whether plaintiff exhausted his administrative remedies before he filed his original complaint.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants Morgan and Dillow's motion for summary judgment (Doc. 111) be **GRANTED** and plaintiff's claims against them be dismissed without prejudice for failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e;

2. Plaintiff's motion for summary judgment (Doc. 115) be **DENIED**; and

3. The Court certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting the Report and Recommendation would not be taken in good faith. *See McGore v.*

*Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997).

Date: 4/20/15

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

ROBERT E. PERDUE,
Plaintiff,

v.

DONALD MORGAN, et al.,
Defendants.

Case No. 1:13-cv-878

Barrett, J.
Litkovitz, M.J.

NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).